# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**MATTHEW L. AVENT,**

      **Petitioner,**

**v.**                             **Case No.  3:12cv56/RV/CJK**

**MICHAEL D. CREWS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 18).  Petitioner replied.  (Doc. 25).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

In 2003, petitioner was charged in three separate cases filed in the Circuit Court for Okaloosa County, Florida: in Case No. 03-CF-960, petitioner was charged with one count of Robbery with a Deadly Weapon; in Case No. 03-CF-961, petitioner was charged with one count of Robbery with a Deadly Weapon; and in Case No. 03-CF-987, petitioner was charged with Aggravated Fleeing or Attempting to Elude a Law Enforcement Officer (Count 1) and Reckless Driving (Count 2). (Doc. 18, Ex. A, pp. 12, 13, 15).[1] Petitioner appeared on a scheduled docket day on August 21, 2003, and entered a no contest plea to all counts as charged in exchange for a sentence capped at 8½ years imprisonment. (Ex. A, pp. 25-28; *see also* Ex. A, Docket Summaries; Ex. B, p. 2). The trial court ordered a presentence investigation report and scheduled the matter for sentencing on September 29, 2003. (Ex. A, Docket Summaries). At the September 29, 2003 hearing, defense counsel presented mental health mitigation testimony (through Dr. Larson) and asked the court to impose an 8½ year prison sentence, suspended on the condition that petitioner complete an 18-month treatment program for drug addition and mental illness at Spectrum Programs, Incorporated, followed by probation. (Ex. B, p. 4). Defense counsel described the proposed sentence as follows:

> MR. HILLEY [defense counsel]: Judge, what I'm asking you to do is – I tried to find a place for him to stay. I called the Phoenix House. I called other places and not very many people will take dual diagnoses.
>
> I do have a place in Southwest Florida by Miami, which I've given to Dr. Larson, which treats dual diagnoses for drug addiction and mental illness. They will hold him there on a court order for 18 months

---

[1]All references to exhibits are to those provided at Doc. 18, unless otherwise noted.

of heavy treatment.

His mother and father are here. They are from North Carolina. As soon as he finishes the treatment after 18 months, Judge, we're going to ask for a suspended sentence and let him go back to North Carolina under supervision of probation.

THE COURT: Is the place down there secure?

MR. HILLEY: It's a secure facility, Judge, with DOC.

THE COURT: What's the name of it?

MR. HILLEY: The name of the place is called Spectrum Programs, Incorporated. I talked to the DOC administrator and they will accept him under court order for 18 months.

THE COURT: Is there a waiting list?

MR. HILLEY: No – well, there is a waiting list, Judge. He'll have to wait in jail. They said if it's court ordered they do it whenever a bed is available.

 . . .

THE COURT: . . . I don't see anything on there where it indicates he will be in any type of secure facility.

MR. HILLEY: Judge, it is a – it is something similar to the Phoenix House, same as Keaton. These programs don't have the bars on the door. What happens, when they're sentenced, they're usually sentenced to a suspended sentence. And that order from the Judge with the suspended sentence is basically the bars on the door. They know if they leave they're going to prison.

Those type of facilities run by DOC usually – Keaton, the Restitution Center, those places, don't have the bars on the door, Judge. It is a facility that they stay at. They don't leave there. Like I said, it's long term. Like I said, these facilities themselves don't have the bars on the door.

. . . If you need me to bring proof of DOC participation with this program, Judge, I can do it. Or we can restrict it to those programs that work with DOC.

THE COURT: Okay. I'm ready to go here. We're going to adjudge him guilty of all counts and sentence him to eight and a half years Department of Corrections, suspended, with the special condition that he enter into and complete the Spectrum Program, Incorporated. If he fails to do that, a capias will be issued and he will be put into prison for 8.5years.

When he's released from Spectrum, whenever that is, he'll serve out the balance of his 8.5 years on probation. That can then be transferred to North Carolina where he can live with his parents.

. . . .

The reason for the departure down from the straight DOC is the need for specialized treatment for dual diagnoses.

. . . .

He's to be held in jail until a bed is ready for him at Spectrum.

(Ex. B, pp. 4-5, 14-15, 18-19; *see also* Doc. 1, Ex. A). On October 27, 2003, the parties appeared before the court for a follow-up hearing, described on the Court Minutes Sheet as "Def. Modification of Sentence". (Doc. 1, Ex. F; *see also* Doc. 1, Ex. A, Docket Sheet Summary for Case No. 03-CF-961, p. 5 and Docket Sheet Summary for Case No. 03-CF-987, p. 6). Defense counsel explained the purpose of

the hearing:

> MR. HILLEY [defense counsel]: Yes, Judge. Judge, on Mr. Avent, I think the Department of Corrections mailed you a letter. You should have that letter from DOC on – he was already sentenced to – last month he was sentenced to the Spectrum Program, which is in south Florida, and you needed some clarification on that, and there's some questions I had for the Court. I'm sure the State's going to have some issues on it.

> He was – the program is an eighteen-month program, Judge, twelve months in-house, and it's run by the Department of Corrections. There's two DOC officers that works [sic] for the program down there. The letter was addressed to you regarding the program. And if there's a violation, for example, the DOC officers are notified, and they basically have a warrant on your desk. It will take about a week or so, because of them being down there. He was sentenced to the completion of that program, and followed by probation for the amount of eight and a half years.

> And there's a couple of questions I have. He can either be placed on probation while down there, Judge, or community control sanctions. And I would ask that the Court sentence him to probation while he's down there, and I think the State is going to be asking for community control for the eighteen months.

> . . . .

> MR. HILLEY: This letter is from the Spectrum Program from the Department of Corrections.

> THE COURT: Does this have something to do with Spectrum not being secure?

> MR. HILLEY: Yeah. Well, Judge, we knew it wasn't secure, but what it is, is Spectrum has three programs down there. One is a detox center for thirty days, one of them is a ninety-day program, and then they have

their long-term court-ordered facility through the circuit courts.

Now, they're the only place in the State that I could find that does dual diagnos[e]s. That's why he couldn't' go to the other facilities. And you had a concern on whether it was long-term or short-term. I have a letter from the DOC that it is a long-term program.

THE COURT: All right.

MR. HILLEY: It is eighteen months. But, like I said, I'd rather, if the Court would ask – if the Court would grant probation while he's down there, I think –

THE COURT: What is the position of the State?

MR. PARKER [prosecutor]: Judge, this was a downward departure, over the State's objection. Our position was that he should go to prison and serve the eight and a half years that we recommended.

If he's going to be placed in such a setting, we certainly don't want him just on probation. But our recommendation was for incarceration.

. . . .

PROBATION OFFICER: Your Honor, we would request that he be on community control at least for the eighteen months, due to the fact that I know that when he gets out and he wants to go back home to North Carolina, that wouldn't effect [sic] – his community control would not effect [sic] him going to North Carolina if he completes the eighteen months, because then we're going to put him on probation, if that's what the Court's decision –

. . . .

THE COURT: Okay. So he'll be on community control for the eighteen

months that he's down there.

MR. HILLEY:  Thank you, Judge.

PROBATION OFFICER:  Followed by the balance of eight and a half years on probation?

THE COURT:  Correct.

MR. PARKER:  Judge, just for clarification, the suspended sentence, should he, at any point during the community control or probation, violate, he's facing eight and a half years suspended; is that correct?

THE COURT:  Correct.

MR. HILLEY:  Judge, that's – I was talking to the client about that as far as what you said last time, and I do believe that you said – that your words were, if he violates on the last day, I'm putting him in prison for eight and a half, which is – I think that's what we understood, also.

(Ex. C, pp. 1-5).

On November 3, 2003, a "Judgement [sic] of Guilt and Placing Defendant on Community Control/Probation" was filed adjudicating petitioner guilty of the charged offenses and imposing an 8½ year prison sentence, suspended upon petitioner's successful completion of 18 months of community control in the Spectrum Program followed by 7 years of probation.  (Ex. A, pp. 51-52; *see also* Doc. 1, Ex. C).  The judgment is dated September 29, 2003.  (*Id*., p. 52).  Petitioner did not appeal.

After petitioner was released from Spectrum in March of 2005, he began his probation.  (Ex. A, p. 61).  In November of 2005, petitioner was arrested in Broward County for a DUI and was found to be in possession of three 10 mg. Methadone tablets.  (*Id*., pp. 59-60).  On December 1, 2005, the Department of Corrections filed

an affidavit for a violation of community control. (*Id.*, pp. 54-55). The VOCC affidavit alleged three violations of petitioner's probation order: (1) violation of Condition 5 by failing to live and remain at liberty without violating any law by committing the criminal offense of DUI Alcohol on November 14, 2005, in Broward County; (2) violation of Condition 6 by using intoxicants to excess or possessing any drugs or narcotics unless prescribed by a physician, by testing positive for the presence of alcohol on November 14, 2005; and (3) violation of Condition 6 by failing to live and remain at liberty without violating any law, by being found in possession of Methadone on November 14, 2005. (*Id.*, pp. 54-55). The violation of supervision report also referenced probation, not community control. (*Id.*, pp. 58-67). According to a certified judgment and sentence, petitioner pled no contest to possession of a controlled substance and DUI in Broward County Circuit Court Case No. 05-CF-18625 on July 25, 2006, and was sentenced to 31.2 months in prison. (*Id.*, pp. 151-64). A hearing on the VOCC affidavit was held on December 10, 2007. (*Id.*, pp. 117-48). The State presented the testimony of petitioner's probation officer, as well as certified copies of petitioner's 2003 Okaloosa County criminal judgment and petitioner's 2006 Broward County criminal judgment. (*Id.*, pp. 127-30, 151-77). Defense counsel argued that the affidavit was for a violation of community control, and the community control expired prior to the new law violation in Broward County. (*Id.*, pp. 140-41). The trial court agreed and, in an order filed January 7, 2008, dismissed the VOCC, retained petitioner on probation and allowed the State to "resubmit VOP instead of VOCC." (*Id.*, p. 92).

In January of 2008, the DOC re-filed the violation as a Violation of Probation. (*Id.*, pp. 93-99, 101-02, 105-08). Petitioner's appointed counsel moved to dismiss the

VOP affidavit on double jeopardy grounds, arguing that the previous VOCC proceeding barred the State from seeking revocation of petitioner's probation based on the same facts. (*Id*., p. 115). The trial court held a hearing on May 21, 2008, and denied the motion. (*Id*., p. 116, 183-200). The case proceeded to a VOP hearing on June 2, 2008. (Ex. A, pp. 201-36). The State called petitioner's probation officer, John Burdeshaw. (*Id*., p. 204). Mr. Burdeshaw testified that he went over the conditions of petitioner's community control and probation order with him, and explained the condition that petitioner could not violate any new laws. Petitioner stated that he understood the conditions. (*Id*, p. 207). The order placing petitioner on community control and probation was entered into evidence without objection. (*Id*.). Petitioner was re-instructed on the conditions when his first probation officer was transferred, and again stated his understanding of the conditions. (*Id*., p. 208). The State called Charles Berry, the custodian of records of petitioner's probation file. (*Id*., p. 212). The State showed Mr. Berry the amended affidavit for violation of probation. The amended affidavit was entered into evidence upon the parties' stipulation. (*Id*,. p. 214). The trial court found that petitioner violated his probation, lifted the suspension on petitioner's sentence, and sentenced petitioner to 8½ years in prison. (*Id*., p. 236). The record reveals no written judgment and sentence or order revoking petitioner's probation, but the facts are evident from the oral pronouncement at the VOP hearing and the docket entries. (Ex. A, Docket Sheet Summaries). Petitioner appealed, but later voluntarily dismissed his appeal. (Exs. D, F). Petitioner's appeal was dismissed on August 5, 2009, pursuant to petitioner's voluntary dismissal. (Ex. G).

On February 6, 2010, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Ex. G, pp. 1-95). Petitioner raised several claims which basically alleged that the trial court was without jurisdiction to modify his sentence to add the community control. The state court summarily denied relief, in relevant part, as follows:

> The Defendant argues in the instant motion that his current sentence of 8.5 years incarceration is illegal. As best the Court can tell, the Defendant is alleging that his modified sentence of 18 months of community control while undergoing drug treatment was improper and somehow invalidates his current sentence.
>
> The Defendant completed drug treatment but was still on probation when, in an affidavit dated December 5, 2005, he allegedly violated the terms of his probation. Regardless of whether it was proper to modify a portion of the Defendant's sentence to include community control, the Court imposed a sentence of 8.5 years DOC that was suspended upon completion of probation. The Defendant's assertion that the Court "did not indicate or even suggest that . . . probation would follow" drug treatment when it first sentenced him is contradicted by the sentencing transcript.
>
> Following a VOP hearing, the Defendant was found to have violated probation and was sentenced to the remaining portion of the suspended sentence originally imposed. Since the Defendant's current sentence of 8.5 years DOC is within the statutory maximum and otherwise a legal sentence, his 3.800(a) motion to correct is without merit.

(*Id.*, pp. 96-104). The Florida First District Court of Appeal ("First DCA") per curiam affirmed without a written opinion. *Avent v. State*, 46 So. 3d 568 (Fla. 1st DCA 2010) (Table) (copy at Ex. J). The mandate issued November 4, 2010. (*Id.*).

On December 29, 2010, petitioner filed a motion to correct the record to reflect that he did not move to modify his sentence on October 27, 2003, as the clerk's notes reflect. (Ex. K, pp. 1-11). The state court denied the motion on February 14, 2011. (*Id.*, pp. 14-15). Petitioner appealed. Petitioner's appeal was assigned First DCA Case No. 1D11-1448. (Ex. K). The appeal was dismissed for petitioner's failure to file an initial brief. (Doc. 18, p. 5).

On January 10, 2011, petitioner filed a state petition for writ of habeas corpus in the circuit court, again challenging the court's jurisdiction to impose the suspended sentence. (Ex. L, pp. 1-37). The trial court denied the motion on February 14, 2011, in relevant part, as follows: "As the Defendant candidly notes in his petition, the legality of his sentence has previously been addressed. The Court, accordingly, will not consider the matter further as the issue has already been considered on the merits." (*Id.*, pp. 38-48) (footnotes omitted). The First DCA per curiam affirmed without a written opinion. *Avent v. State*, 70 So. 3d 589 (Fla. 1st DCA 2011). The mandate issued October 18, 2011. (Ex. O).

Petitioner filed his federal habeas petition in this Court on January 23, 2012. (Doc. 1, p. 1). The petition presents three grounds for relief, all grounded in double jeopardy principles. The theme underlying petitioner's claims is that two separate sentences were imposed upon him: (1) the "original" sentence imposed on September 29, 2003, which, according to petitioner, was "8.5 years probation, completion of Spectrum Program and 8.5 years D.O.C. suspended upon completion of Spectrum Program" (doc. 1, p. 4), and (2) the "second" sentence imposed on October 27, 2003, which, according to petitioner, was "the addition of 18 months of Community Control" and the "addition" of two more conditions on suspension of the 8.5 year

prison sentence – petitioner's completion of Community Control and Probation "rather than just completion of Spectrum Programs as originally imposed." (*Id*.). Petitioner asserts that but for the unconstitutional multiple sentences, he would not be in DOC custody, because his 8½ suspended prison sentence would have terminated upon his completion of the Spectrum Program in March of 2005. (Doc. 1, pp. 4-6). Petitioner asserts that he presented these issues in his Rule 3.800(a) proceeding and in his state habeas petition. (*Id*.).

Respondent addresses petitioner's three grounds for relief as essentially raising one claim: that the state court lacked jurisdiction to modify/clarify petitioner's sentence in October of 2003 and, therefore, the trial court could not find petitioner in violation of his probation and impose the suspended sentence in 2008. (Doc. 18, p. 11). Respondent asserts the following reasons why petitioner is not entitled to federal habeas relief. First, if petitioner is claiming that the state court erred by imposing community control at the October 29, 2003 hearing, the claim is unexhausted and procedurally defaulted because petitioner could have and should have raised the claim on direct appeal following entry of the 2003 judgment and sentence, failed to do so and is now barred by state procedural rules from raising the issue in state court, (*id*., pp. 12-15), and, even if not procedurally defaulted, no relief can be granted because petitioner completed the community control portion of his sentence and was not "in custody" on that portion of his sentence when he filed the instant petition, (*id*., pp. 12-16). Second, if petitioner is claiming that the trial court for the first time at the October 27, 2003 hearing imposed probation, he is mistaken as the transcript of the September 29, 2003 hearing conclusively establishes that the trial court imposed probation following petitioner's release from the Spectrum Program. (*Id*., pp. 16-17).

Even liberally construing petitioner's claim as challenging his entire sentence (not just the community control portion of it), and even assuming to petitioner's benefit that he properly exhausted his claims by presenting them to the state trial and appellate courts in his Rule 3.800(a) proceeding which resulted in an adjudication on the merits, petitioner is not entitled to federal habeas relief.

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr*., 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely

---

I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been

squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

### Double Jeopardy Standard

In *United States v. Ursery*, 518 U.S. 267, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996), the Supreme Court reiterated the clearly established Federal law governing double jeopardy claims:

> The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5. The Clause serves the function of preventing both "successive punishments and . . . successive prosecutions." *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2855, 125 L. Ed. 2d 556 (1993), citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The protection against multiple punishments prohibits the Government from "'punishing twice, or attempting a second time to punish criminally for the same offense.'" *Witte v. United States*, 515 U.S. 389, 396, 115 S. Ct. 2199, 2204, 132 L. Ed. 2d 351 (1995) (emphasis deleted), quoting *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 633, 82 L .Ed. 917 (1938).

*Id.*, 518 U.S. at 273, 116 S. Ct. at 2139-40.

### Federal Review of State Court Decision

Petitioner's argument that he has been subjected to two sentences for the same offense is grounded in a faulty factual premise. As the state court correctly and

reasonably found, only one sentence was imposed – the sentence reflected in the November 3, 2003, judgment. The sentencing transcripts and Judgment reflect, and petitioner's counsel agreed at the October 29, 2003 hearing, that the sentence imposed on September 29, 2003, was an 8½ year prison sentence suspended on the condition that petitioner complete the treatment program at Spectrum (under the supervision of the DOC) and a term of probation following treatment for the remaining balance of the 8½ years. Defense counsel acknowledged, at the October 27, 2003 hearing, that that was his and petitioner's understanding of petitioner's sentence at both the September 29, 2003 hearing and the October 27, 2003 hearing. The fact that the sentencing court, at defense counsel's request, later clarified the type of supervision petitioner was considered to be under while at the Spectrum Program (community control versus probation) did not impose an additional sentence, did not make petitioner's sentence more onerous, and did not affect the substance of petitioner's sentence. The state courts' denial of relief on petitioner's claims was not contrary to clearly established Federal law, was not based on an unreasonable application of clearly established Federal law, and was not based on an unreasonable determination of the facts. Petitioner's sentence does not violate the constitutional prohibition on double jeopardy, and his claims do not entitle him to federal habeas relief.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing

Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging petitioner's criminal judgment and revocation of probation in *State of Florida v. Matthew Lee Avent*, Okaloosa County Circuit Court Case Nos 03-CF-960, 03-CF-961 and 03-CF-987 be DENIED, and the Clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 12th day of November, 2013.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).